The Illinois Appellate Court Court Division is now in session. The Honorable Mary K. Rockford presiding with justice. Good morning. You may be seated. Before we begin, we have some special visitors in the courtroom and Justice Ocasio would like to welcome them on behalf of the court. We have the appellate court of the state of Illinois. We would like to welcome the group of students from the Brighton Park community from the community-based organization Party for Purpose. Is that right? This is an appellate court case. We're going to have arguments from two sets of attorneys. They're going to be arguing if the judge did something right or if the judge did something correct. And they're asking us to review that decision of what the trial court did. And we'll make a decision in writing in a timely basis. Welcome to the Party for Purpose group. So could the case be called, please? 1-22-11-1. So good morning, counsel. We will allow each side 15 minutes and the appellant will have five minutes to reply. So if you are ready, we are set to begin. So for the appellant, please approach and introduce yourself. Good morning, your honors, counsel. Adrian River. I'm sorry, can you speak a little louder? Adrian River, the office of the state of appellate defender representing Nicole Murray. R-I-V-E-R-S? No S, just River. River, okay. Yes. Your honors, Nicole Murray was ill to such a degree that her cognitive abilities were impaired, resulting in an involuntary guilty plea. There were numerous stressors in her life. The record shows that she recently lost temporary custody of her son. She had such extreme anxiety that she went to the hospital several times and she had flare-up of a serious physical illness, immunosuppressive illness and fatigue. And the combination of these mental and physical factors resulted in extreme duress and resulted in disorganized thinking and an inability to appreciate the seriousness of the guilty plea. If you look at her statements at the guilty plea hearing, which the doctor, the expert that was retained, noted, there's evidence of some disordered thinking, disjointed statements. She said she couldn't feel she could win a trial because the state had never protected her. So she was conflating her issues with trying to get help. She had complained that her son had been violent to her with the state and the prosecution in this case. She also said something about how her son had been coerced. So these were not responsive. These were disjointed, irrelevant statements, showing that she was focused on other things. And again, on the face of the transcript, she made many statements referring to other things that had nothing to do with pleading guilty. She said, I'm pleading guilty because I have two other children. My son doesn't want contact. I'm guilty of loving my son. The state had failed her. The doctor also, in reviewing the transcript, said that she thought she was confused. And it's well known that lupus can cause confusion. There's information about that on websites for National Institutes of Health, Lupus Foundation. Many people have cognitive dysfunction from that physical illness. But you're signing to something, though, that's right now that's not in the record. Is that correct? Yes. Yes. I'm just saying, preparing for argument, I checked that. But yes. There was no evidence from the expert witness that there was cognitive impairment. Is that correct? She said that her examination of the transcript led her to believe that Marie was confused. She did say that at one point in her testimony. And her expert opinion was that her physical condition, as well as other factors, meant that she did have cognitive dysfunction at that time. All the stressors coming together, physical illness, she wasn't cognitively able to intelligently, rationally decide, I want to plead guilty today. It's similar, let's say, a very obvious case. Someone has a very high fever. They're incapacitated by some medication. That person wouldn't, at that moment, wouldn't be cognitively able to make a rational decision to plead guilty. And that's what happened here. But you're right. She didn't say lupus specifically caused confusion, but she did note that the transcript showed confusion by Ms. Marie. And a psychologist was board certified in forensic psychology. She interviewed Marie for three hours. She talked to plea counsel. And she evaluated medical records. So there's a lot of evidence supporting her uncontroverted expert opinion that the plea was intelligently made. Excuse me one second. The trial court made a declaration at some point discounting Dr. Leska's testimony because she had testified for the defense 450 times. Did the trial judge make a mistake? Yes, I think that's an arbitrary decision. We don't know that she would always issue an opinion in favor of the defendant. All we know is that she chose to testify on behalf of defendants. That doesn't mean she's always going. We don't know. She may have rejected, refused to testify in other situations. Because she didn't think that she could testify in favor of the defendant. I chose to do appellate work on behalf of the defense. That doesn't mean I'm less credible. So I think that was an arbitrary decision. Isn't that a pretty typical and relevant line of inquiry as to an expert witness, the number of times they've testified in court and whether they testified for one side or the other? It's a pretty typical question, isn't it? It's a typical question. I think that you often see that in jury trials. The attorneys are trying to put some doubt into the jurors' minds as to the credibility of the expert witness. She testified under oath. There's just no basis in this record to conclude that her opinion is wrong just by virtue of the fact that she has only chosen to testify under oath. But I think the court didn't totally discount just because of that factor. As you indicated, it does go to the credibility and possibly the weight of the opinion. I think it's possible, but I don't see that there was enough other information in this record to conclude that just by virtue of the fact that she had not testified for the state, that she could wholesale discount her testimony. And I would agree with that, but I'm not certain that the record shows that that's what happened here. Do you think that that's what happened? That that's why the trial court – that was one of the reasons – I mean, there were other reasons that I addressed in the brief also, yeah. I was just responding to Justice Ocasio's point on that. And other evidence in the record, she noted that a physician at the hospital the same month that Murray had pled guilty noted that she had great propensity for anxiety, and it was sometimes out of proportion to the situation. And then when she interviewed the plea counsel, plea counsel said Murray wouldn't listen to me, she was preoccupied with how she was unfairly treated by the state, she would go on – she wouldn't focus on issues. She talked about peripheral things, irrelevant matters, so there's also a lot of evidence done just from that – also from that interview with plea counsel. So it's an interview with plea counsel, it's an interview with Murray, and medical records. And so there's a well of information. The state didn't present a contrary expert, so it's a difficult standard, but I think we've met that. I think it was a very arbitrary decision, this is a very unusual case, I'm not sure I've ever seen a case where we got an expert witness, board certified in forensic psychology no less, to support the motion to withdraw a guilty plea. Counsel, if I may interrupt you for just a moment. Yes, of course. Reading the transcript, it was interesting, as the judge admonished your client about her rights to plead guilty or to go to trial, as she would interject, as you've spoken about a few moments ago, as she would interject, the judge would advise her that if she wished not to plead guilty, she certainly could, and yet she persisted in her plea of guilt. What are your thoughts on that issue, the fact that looking at the transcript, it would appear that the judge gave her the proper admonishments, that she seemed to understand and appreciate those admonishments, but yet you argue that those admonishments weren't freely given. Well, the expert talked about that, she said that often people who have problems with cognitive impairment at the moment may be capable of saying yes, but it's like they're going through the motions, but you can really see the cognitive dysfunction when the person is speaking at length. So that was her conclusion, and that makes sense to me, and that she kept persisting and talking about other things seemed to show that she was wanting to get this over with, she was under tremendous stress, you know, I lost custody of my kid, I want to get out of here. So I don't think it can't be determinative that she said yes, I mean, if it was determinative that somebody said yes, I understand, then we would never, no one would ever succeed in a motion that was rather a guilty plea. The whole point is to present evidence outside the record that informs our interpretation of that kind of rote response. And I know there was a case discussed in the briefs, People vs. Er, where there was a duress due to physical threats from a person in the jail. Yes, that her decision, yeah, now that, to go to your point that you just made a few moments ago, that I thought was rather clear and in your face. It was rather what? I thought it was interesting that the appellate court still found error in denying a later motion to withdraw the guilty plea, even though the defendant was given a chance to make that plea. At the time, to give up, to vacate the plea, in other words. So if, you know, so I think that's a very strong case that even though she said yes, I want to plead guilty, that that's not a ground to deny the motion to withdraw a guilty plea. So that's, I think, a very favorable case for us for a couple of different reasons. Thank you. And I also just want to briefly touch on the second ground that she asserted self-defense. The only Supreme Court said if you have a defense worthy of presentation to the jury, that's a reason to withdraw the guilty plea. This court, in denying the Anders motion in the original brief, noted that the trial court had not addressed her assertion of self-defense, and still on remand, the court did not do so. And while it complained about violence, the son had said in court that he had pushed her over on a couch, over the couch at one point. I wanted to correct the reply, incorrectly stated that the son had testified that was on the date of this incident in August, and I double-checked. And he, it was a little confusing, but he seemed to be referring to an incident a few months before. So I just wanted to correct my brief on that point. But that's an additional reason that the only Supreme Court says you can withdraw the motion. What do we need to have in the record to consider that issue? Yeah, you know, I didn't see any cases that give us guidance on that. There is, she didn't testify about self-defense at the hearing on the motion to vacate. I mean, I don't think you can have a mini-trial before a trial. I don't think she'd have to present all her evidence. But there is evidence in the record at hearings at various times. She said, my son's been violent towards me. I'm trying to get help from the state. She told the psychologist that she had pictures of the son with knives. So there is some evidence in the record, but it was not touched upon at the hearing on the motion to withdraw the guilty plea. I mean, I don't know what the answer is. I did not see any cases on how much evidence you had to present to come under that category of you have a defense worthy of consideration. But that's all. Any other questions? I have no other questions. Okay. No questions. Thank you very much. Thank you. For the state. Good morning, your honors. David Iskowich, I-S-K-O-W-I-C-H. Thank you, sir. Good morning, your honors. Good morning. Again, David Iskowich with the Cook County State's Attorney's Office for the People. Just stepping back a moment to briefly touch on some first principles with respect to the law of guilty plea withdrawals. The defendant does not have an automatic right as of course to withdraw his plea once that plea is finished. Rather, he may move to withdraw his plea and succeed on that motion as relevant here by showing that he or she, in this case she, was working under some misapprehension of the law or facts, some misunderstanding of the law or facts of the proceeding that the plea proceeding. The trial court here, the judgment under review is for an abuse of discretion, which occurs when the decision is, for lack of a better word, unreasonable based on the record. The trial judge here at the hearing on the amended motion to withdraw was working on what I see as a body of evidence comprised of three parts. First, Dr. Leska's opinion and supporting documentation, plea counsel's testimony, and to some lesser extent his own recollection of the prior plea proceeding at which she was presiding. The defendant's argument focuses primarily on Dr. Leska's view of the defendant's mental acuity during the plea proceeding. I want to touch upon a few things that Dr. Leska expressly did not find. She found that the defendant was not of subpar intellect. The defendant suffered from no diagnosable thought disorders, no mental illness, no mental disorders such as anxiety disorder or depressive disorder. The defendant had no history of drug or alcohol abuse. The defendant, while taking lupus medication, was not affected by that medication vis-à-vis her mental state at the plea proceeding. Rather, what Dr. Leska's opinion boils down to is that the defendant had stress, she had anxiety, and she had some discomfort with the way the proceeding was going on. These factors are simply not enough to clear the misapprehension bar for successfully withdrawing a plea. Trial court reasonably observed in her position as a judge in the domestic violence division that stress, anxiety, and discomfort, anger perhaps, are unfortunate byproducts of being embroiled in the criminal justice system and in domestic violence court in particular. This is a defendant whose own son was the accuser. There was an order of protection hearing at which the son testified. DCFS was involved. The child was the accuser. And these stressors are an unfortunate product of being involved in the system, as the judge reasonably determined. The doctor did a little bit more than say that there were a great deal of stressors involved in her life. The doctor also went on to say that those stressors impaired her cognitive ability so that she was unable to fully appreciate and knowingly and intelligently plead guilty. So what do we do with that opinion? Sure. So the judge, so expert opinions are not infallible, but are also open to the very basic rules concerning credibility and feasibility and plausibility as any other witness or opinion. The judge was not, as the defendant maintains, automatically bound by Dr. Leska's attempt to make a nexus between the stress and her mental state. The judge was also allowed to view that opinion in light of her own eyes and ears that were there on the spot during the plea hearing. The judge was also empowered to view the admonishments as keeping with the law and completely correct. The defendant makes no attempt to undermine the validity of the actual admonishments. The judge was also entitled to look at her opinion in view of plea counsel's testimony and representations about his recollections of the case. Counsel said that at the plea hearing, leading up to the plea hearing, the defendant was, quote, firm in her decision to plead guilty. On the day of the hearing, she did not appear anxious. She was not crying. She was not carrying on. She was frustrated with the way things had proceeded. But, again, that's simply part and parcel of being in her position as a defendant in domestic violence court. So I guess just to circle back, Your Honor, the answer is the trial judge was not obligated to believe that that connection existed but could use her judgment to accept parts of it, accept none of it, or some combination thereof. So Dr. Lesk's opinion is not the only evidence in this case bearing on the defendant's mental state at the plea hearing. The defendant also relies on Dr. Lesk's opinion that she engaged in some sort of, quote, tangential thinking in allocution. But a closer review of her statements actually revealed that she was aware of what her case was about and what the implications were going forward. In allocution, she expressed her opinion that she couldn't win a trial. She expressed concern that she still had two children, minor children at home, who depended on her care. She expressed concern that her lupus diagnosis was uncomfortable. And she also expressed some anger or concern that her son had allegedly been coerced by someone or some which she never specified by whom but was coerced. All of these concerns actually bear on her case. A person can plead guilty for any variety of reasons that don't rise to the level of apprehension or confusion. The defendant had lupus, yes, and it was uncomfortable. It is uncomfortable, sure. But there's nothing improper about a defendant deciding to forego trial in order to preserve fragile health. There's no problem with a defendant deciding to forego trial to spare her minor children of having to come to court or seek child care for ongoing trial proceedings. And there's nothing wrong with pleading guilty, of course, on the belief that one simply cannot win a trial. These statements in allocution actually demonstrate that she understood the proceeding that had just occurred. And as this Court knows, statements in allocution on its review of thousands of criminal cases, statements in allocution are the defendant's last chance to really say on the record how he or she feels about the case, about the future, explain what happened in the past. To the extent that any of these feelings that she expressed in allocution were tangential, that doesn't create a plausible connection to her inability to understand what had just occurred. They simply could be tangential in the respect that they were her expressions of frustration and anger and perhaps continuing anxiety about the future and what that held for her and her children. Justice Ocasio, just to circle back to your question about the Court's comments about the experts' practice of testifying for the defense. The judge did say that, but as I mentioned earlier, experts are subject to the same credibility judgments that any other expert would be subject to. And as Justice Brokford mentioned that this was not, or was it Justice Martin? I'm sorry, I can't remember. One of you mentioned that this was not a comment standing alone. Is Justice Brokford? Now, if the judge had said, I don't believe you because you always testify for the defense, motion denied, I think we'd be up here with a different set of problems, serious problems. That's not what happened here, of course. The judge looked at the evidence, applied the law to the facts, and came down on, came down against defendant in a decision that cannot be described as unreasonable. Regarding the allocution at some point, I think the trial judge acknowledged that Ms. Murray may have had some sort of defense, but there was some suggestion that the self-defense defense was raised at the last minute. Should the trial judge not have taken note of that? It just seems that she sort of ignored it. I think that the better question, and I'm answering your, I'm not suggesting your question. No, no. I think maybe the better question is why didn't trial counsel speak up at that point and submit a better case, or submit some facts, or offers a proof with respect to that defense. The defendant may have an arguable basis on post-conviction review to challenge counsel's dropping the ball in that respect. But the trial judge was not under an obligation, given the facts, before him to continue to not advocate for it, but seek more information on that. It was defendant's burden to show that she was under a misapprehension. Now, the trial judge got the impression from the defendant that the cards were stacked against her. Doesn't the trial judge have some obligation to say, if you feel me that way, maybe today's not the day to take the plea and continue the case for her to consider and deliberate? Because according to the record, as I saw it, it appears that the plea offer was made on a day that she thought was going to be a status date. And maybe she didn't have enough time to consider the consequences. Sure, Your Honor. So that's a separate, that would be a separate ground for moving to withdraw the plea that the defendant hasn't raised, that she wasn't ready. For the plea proceeding. What's the duty of the trial court, though? I'm sorry, Your Honor. What's the duty of the trial court? The trial court has to read the admonishments pursuant to the Supreme Court rules. And the trial judge did so. To the extent, again, the defendant has any other complaints with respect to counsel's handling of this, the post-conviction room would be perhaps a viable option for her. But we're here on the trial judge's exercise of sound judicial discretion. And as I've discussed, we think that that discretion was properly and reasonably exercised here. There was plea negotiations going on before this. Yes, Your Honor. But you knew that probation was on the table. That's correct, Your Honor. Also, there was a representation by the defendant that the prosecution had somehow threatened to upgrade the charges. This was in January of 2015. The plea, I believe, was April of 2015. That threat to upgrade the charges briefly touched upon by defendant isn't a viable basis to upset this plea either, because plea negotiations regularly entail these kinds of back-and-forth charging decisions and discussions over what charges might be viable if trial goes forward and what charges might be dropped if the plea is taken. These are not extraordinary circumstances that would affect her understanding of what was going on at the plea proceeding. With respect to the self-defense, this prong of the argument seemed to have gotten kind of dropped in the trial court at various levels. We do have a standard. Counsel said there's no real clear case law in this, but I cited a case in our brief, People v. Doherty, which briefly touched upon a couple things. Withdrawal of a plea is arguably appropriate if the defendant presents what's called, characterizes a meritorious self-defense with objective evidence. And those prongs weren't met here. The defendant mentioned that the victim had acted out on several occasions but provided no real specifics or any details about what those acting out or violent instances entailed. As Your Honors are aware, there is a self-defense statute, the elements of which must be met in order to advance a successful defense in that respect. The defendant did not mention any of those elements or how they might apply here. And so our view is that the self-defense aspect of this case is plainly meritless and doesn't support, there's not enough on the record to support invalidating a plea on that, on the meager record before us. And again, if defendant wants to challenge perhaps counsel's performance in this respect, she has other remedies available. But we would ask that on this record the self-defense claim is simply not vetted enough to warrant the drastic measure of allowing withdrawal of the plea. If the court doesn't have any further questions, thank you, Your Honors, for your time this morning. We respectfully request that the court affirm the judgment of the trial court as a proper exercise and reasonable exercise of judicial discretion. Thank you, Your Honors. I have nothing else. Thank you, counsel. Anything in rebuttal? Yes, a couple points. I believe the counsel said that the doctor stated she didn't find anxiety, I mean, that's not true. She said at 434 or 435 that Murray suffered from great, or 435, suffered from great anxiety, and then 434 to 435 she noted the hospital records I referenced before where the hospital physician said she had great propensity for anxiety and recommended she go on medication. Yes, the judge was there at the guilty plea hearing, but the judge doesn't have expertise in determining whether a defendant's cognitive abilities have been impaired by stressors, including physical illness. The state argues that expressions of frustration and anger at the guilty plea hearing weren't relevant, and she had answered yes, but these expressions show that she wasn't focusing on the plea decision. She was focusing on her problems with the state and losing custody of her son. And, yeah, I think based on her behavior, I question that the trial court accepted the plea here. And should also the plea counsel have said something, I don't think we should proceed today, because she went on at length in talking to the psychologist about when she had discussions with her about the plea, she won't listen to me, she won't discuss options, she's talking about different things. So, yeah, this is a case where it should not have been accepted. And, Your Honors, we respectfully request that you reverse the trial court and remand so that Murray has a chance to have a trial in her case. Any questions? No questions. Thank you. Thank you very much. We appreciate the arguments of both sides, and the case will be taken under advisory.